IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PHILLIP BYRD,

Plaintiff,

v.

CHRIS BUESGEN,

Defendant.

OPINION and ORDER

23-cv-64-jdp

Plaintiff Phillip Byrd, appearing pro se, is a prisoner at Stanley Correctional Institution (SCI). Byrd filed this lawsuit in the circuit court for Dane County, Wisconsin, suing SCI Warden Chris Buesgen for multiple violations of federal and state law, mostly focused on his right of access to the courts. Buesgen removed the case to this court and paid the filing fee. Buesgen later submitted Byrd's amended complaint, Dkt. 10-1, which I will consider as the operative pleading.

Because Byrd is a prisoner, the next step is for the court to screen the complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. In doing so, I must accept his allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will grant Byrd leave to proceed on access-to-the-courts, retaliation, and state-law negligence claims.[1]

---

[1] The parties have filed motions for the court to screen Byrd's complaint, Dkts. 10 and 11, which I will deny as unnecessary. Byrd has filed a motion for leave to proceed in forma pauperis, Dkt. 14, which I will deny as unnecessary because defendant Buesgen paid the filing fee when he removed the case.

ALLEGATIONS OF FACT

Byrd states that there is limited time to use the law library at Stanley Correctional Institution because of staff shortages. There is only one computer with Microsoft Word to finalize the documents that inmates prepare using other software. The policies make it difficult for prisoner to timely submit legal filings.

In April 2022, defendant SCI education director Gerald Van Ert transferred legal work that Byrd had stored on his EdNet account to a USB drive for Byrd's use. Van Ert stated that the legal work wasn't appropriately stored on Byrd's education account. Van Ert conducted this transfer out of Byrd's presence. Byrd used law library time to draft letters to Van Ert complaining about Van Ert's actions. In response, Van Ert issued Byrd a conduct report for disobeying orders and threats. Byrd was convicted on both counts but the threats conviction was overturned on appeal. He received room confinement time as punishment.

In early May 2022 Byrd went to the library for previously scheduled "extra law time" but was sent back to his cell by defendant Sergeant Roger Seichter because he hadn't gotten permission to leave his cell confinement ordered from his disciplinary proceedings. Van Ert gave Byrd a conduct report for being in an unassigned area. He was convicted and punished with room confinement and loss of electronics. A few days later, defendant Charles Holloway gave Byrd a conduct report for disobeying orders by being out of his cell during his room confinement.

In June 2022 Byrd attempted to send out legal mail with a mailing label on it; the mail was returned to him because of a prison policy banning stickers. Later that month Byrd's postconviction motion in state court was denied because Byrd was unable to submit an amended petition.

Byrd filed a series of inmate grievances about these events, with all of them being dismissed or rejected.

ANALYSIS

Byrd contends that prison staff have violated his rights in various ways under the United States Constitution, Wisconsin Constitution, and other state law.

**A.  Federal claims**

The main thrust of Byrd's complaint is that prison policies and practices deprived him of his right of access to the courts. The United States Constitution guarantees prisoners the right to have "meaningful access to the courts." *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 823 (1977)). To state an access-to-the-courts claim, a plaintiff must allege an underlying nonfrivolous claim that the prison officials' actions impeded. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996). I take Byrd to be saying that staffing shortages, restrictions on law library access, and mailing rules kept him from filing what would have been a meritorious postconviction motion in a criminal case. That's enough to support an access-to-the courts claim.

That raises the question who the proper defendants should be for such a claim. Byrd names 20 DOC employees as defendants in his amended complaint, but he doesn't explain how most of them were involved in the events other than to note that each of them "participated" in violations or learned about them and failed to do anything to rectify the problems. That's too vague to show that individual defendants were indeed personally involved in the events. And their knowledge of a problem isn't necessarily enough to support a claim

against them either. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). That applies equally to the complaint examiners who Byrd alleges denied his various grievances. *Id.* (Claim against complaint examiner fails where prisoner "has not accused [examiner] of refusing to do her job and of leaving the prisoners to face risks that could be averted by faithful implementation of the grievance machinery. He contends, instead, that [examiner] should be held liable because she carried out her job exactly as she was supposed to.").

Given the lack of allegations indicating that particular defendants created or enforced staffing, law library, and mailing practices, at this point I will allow Byrd to proceed only on an access-to-the-courts claim against defendant Warden Chris Buesgen, who reviewed most of Byrd's grievances and is presumably responsible for enforcing policies at SCI.

Byrd contends that defendants violated his First Amendment rights by making changes to the contends of his USB drive without him being present, counter to DOC policy. But Byrd cannot succeed on constitutional claims based on the improper application of prison regulations. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (section 1983 protects plaintiffs from constitutional violations, "not departmental regulations and police practices"). And he doesn't otherwise allege that defendants committed any misconduct; rather, he states that defendant Van Ert transferred legal work from Byrd's EdNet account to a USB drive.

Byrd states that defendants issued him false retaliatory conduct reports, that his disciplinary proceedings lacked proper due process, and that the punishment he received violated the Eighth Amendment. Byrd's allegations of false conduct reports, by themselves, do not state a procedural due process claim. *See Murphy v. Pollard*, No. 22-cv-548-wmc, 2022 WL 5241860, at *1 (W.D. Wis. Oct. 6, 2022). A "prisoner's liberty interest, and incumbent

entitlement to procedural due process protections, generally extends only to freedom from deprivations that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (alteration adopted); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) ("[D]isciplinary segregation can trigger due process protections depending on the duration and conditions of segregation."). The short-term punishments of room confinement or loss of electronics aren't atypical and significant hardships that could support a due process claim. Nor do they support an Eighth Amendment claim.

Byrd contends that the conduct reports were retaliatory. To establish a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). But even if a prison official held retaliatory intent, a plaintiff cannot maintain a retaliation claim for a conduct report given for legitimate reasons, *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015) (citing *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009), and *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)). That is fatal to most of Byrd's retaliation claims: he doesn't explain what was false about all but one of the charges he faced—he appears to concede that he improperly used law library time to write letters to staff and that he left his room confinement to go to the library. The one exception is defendant Van Ert charging Byrd with threatening him; his initial conviction on that charge was reversed on appeal. I will grant Byrd leave to proceed on a retaliation claim against Van Ert for falsely charging him with threats in response to the letter he wrote Van Ert.

**B.  State-law claims**

Byrd calls his lawsuit a "State Tort Negligence Action." Dkt. 10-1, at 3. Under Wisconsin law, a claim for negligence "requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. For the same reasons that I am allowing him to proceed on a federal access-to-the-courts claim against defendant Buesgen and a retaliation claim against defendant Van Ert, I will allow him to proceed on negligence claims against those defendants.

Byrd also cites portion of the Wisconsin Constitution in his complaint, but this court cannot grant him relief on any claims under the state constitution. The state constitution does not authorize suits for money damages except in the context of a takings claim. *See, e.g.*, *Kingsley v. Raddatz*, No. 13-cv-432-bbc, 2014 WL 3447192, at *4 (W.D. Wis. July 11, 2014). And the doctrine of sovereign immunity prohibits federal courts from issuing enjoining state officials under state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984).

Byrd attempts to bring claims for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress has four elements: (1) the defendant intended his conduct to cause emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme disabling emotional response to the defendant's conduct. *Rabideau v. City of Racine*, 2001 WI 57, ¶ 33. I will not allow Byrd to proceed on this type of claim. His allegations do not suggest that any of defendants' actions were undertaken "for the purpose of causing [him] emotional distress." *See id.* ¶ 36. Nor do Bryd's allegations suggest that this conduct caused him an extreme disabling emotional response. *See Alsteen v. Gehl*, 21 Wis. 2d

349, 360–61 (1963) (the plaintiff must allege that he "was unable to function in his other relationships because of the emotional distress caused by defendant's conduct"). Byrd's bare assertions that he suffered "severe or extreme emotional distress," Dkt. 10-1, at 30, are "legal conclusion[s] couched as [] factual allegation[s]" and fail to adequately plead severe emotional distress. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## C. Recruitment of counsel

Byrd has filed a motion for appointment of counsel, Dkt. 4. Litigants in civil cases do not have a constitutional right to counsel, and I do not have the authority to appoint counsel to represent a pro se plaintiff in a civil matter. Rather, I can only assist in recruiting counsel who may be willing to serve voluntarily. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). To show that it is appropriate for the court to recruit counsel, a plaintiff must (1) show that he cannot afford a lawyer, (2) provide the names and addresses of at least three lawyers who have declined to represent him in this case; and (3) demonstrate that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his demonstrated ability to prosecute it. *See, e.g.*, *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). Byrd qualifies from a financial standpoint and he states that he has contacted several law firms, so he meets the first two requirements.

But I will deny Byrd's motion because I am not convinced that the case is too complex for him. His filings in this case do not show that his abilities are below those of the hundreds of prisoners who bring civil rights cases in this court each year. And his claims about interference with his legal proceedings should be relatively straightforward. His allegations that staff continue to delay his litigation efforts might be reason to extend a deadline to submit a

filing or to inquire further about the nature of the prison's mailing restrictions, but they are not reasons to recruit counsel. I will dismiss Byrd's motion without prejudice, which means that he can renew his motion if he continues to believe that he is unable to litigate the suit himself. But if he refiles his motion, he will have to explain what specific litigation tasks he cannot perform himself.

## D. Preliminary injunctive relief

Byrd has filed two motions for preliminary injunctive relief. In his first motion he asks to enjoin Warden Buesgen from restricting his law library access, inspecting his legal documents, confiscating his legal materials, or issuing him retaliatory conduct reports. Dkt. 5. In support of his motion, Byrd suggests that prison policies or practices related to mailing and law library access caused him difficulty in litigating state-court appeals. But state-court online records show that in Byrd's only pending appeal, the court of appeals granted Byrd's motion for an extension of time to file his reply brief and his motion is now fully briefed and awaiting decision. *See State v. Byrd*, No. 2022AP1048 (Wis. Ct. App.).[2] There isn't any indication that Byrd currently faces the risk of suffering irreparable harm without a preliminary injunction, so I will deny his motion. *See DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). If Byrd also means to argue that prison officials are hindering his efforts to litigate this federal case, he hasn't shown reason for the court to take the rare step of intervening in prison mailing or library procedures; his multiple filings in this case suggest that his access to this court is not being blocked.

---

[2] *See* https://wscca.wicourts.gov/.

In his other motion, alternatively titled as one for contempt, Dkt. 6, Byrd seeks an order forcing defendant Buesgen to comply with an order issued by the state court prior to removal directing the prison business office to allow Byrd the use of release account funds for "any additional fees and costs in the above named action, as well as any service costs. This includes legal costs like photocopies, materials, and postage related to this litigation," Dkt. 6-6. Buesgen objected to this order, stating that Wisconsin statue provides no authority for the use of release accounts in this way. Dkt. 6-9. But before the court could take action on the issue, Buesgen removed the case to this court.

I won't hold Buesgen in contempt for seeking reconsideration of what he believes was a state-court order issued without proper legal basis; parties routinely seek reconsideration of orders they disagree with. And I won't otherwise enforce the state-court order. There is no reason to wade into the substantive dispute over the precise contours of Wisconsin release-account law: now that the case has been removed, it is no longer subject to Wisconsin procedural law, and in any event this federal court does not have authority to issue an injunction against prison officials under state law. *Smith v. Hepp*, No. 17-cv-396-bb, 2017 WL 4712229, at *2 (W.D. Wis. Oct. 18, 2017) ("It is up to prison officials to decide how to apply the release-account regulations; this federal court generally cannot tell state officials how to apply state law." (citing *Pennhurst*, 465 U.S. 89)). I will deny Byrd's second motion for preliminary injunctive relief or for a contempt ruling.

ORDER

IT IS ORDERED that:

1. Plaintiff Phillip Byrd's motion to correct the record, Dkt. 3, is GRANTED. Plaintiff's amended complaint, Dkt. 10-1, is the operative pleading.

2. The parties' motions for the court to screen the complaint, Dkts. 10 and 11, are DENIED as unnecessary.

3. Plaintiff's motion for leave to proceed in forma pauperis, Dkt. 14, is DENIED as unnecessary.

4. The clerk of court is directed to amend the caption to include defendant Gerald Van Ert.

5. Plaintiff is GRANTED leave to proceed on the following claims:

   - Access-to-the-court and Wisconsin-law negligence claims against defendant Chirs Buesgen.

   - Retaliation and Wisconsin-law negligence claims against defendant Gerald Van Ert.

6. The remaining defendants are DISMISSED.

7. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 4, is DENIED without prejudice.

8. Plaintiff's motions for preliminary injunctive relief, Dkts. 5 and 6, are DENIED.

9. The Department of Justice may have until October 10, 2023, to inform the court whether it will accept service for defendant Van Ert.

10. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

11. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

12. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

13. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered September 18, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge